<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

WILLS, O'NEILL & MELLK,

        Plaintiff,

v.

LINE ROTHMAN and GLAMOURMOM, LLC

        Defendants/Counter Third-Party
        Plaintiffs/Third-Party Plaintiffs,

v.

WILLS, O'NEILL & MELLK, ARNOLD M.
MELLK, ESQ., ALAN G. JACOBSON, ESQ.,
JOHN F. SWEENEY, ESQ., and EVELYN
G. HEILBRUNN, ESQ.

        Defendants on the Counterclaim/
        Third-Party Defendants.
_____

Civil Action No. 10-3078 (JAP)

**AMENDED MEMORANDUM**
**OPINION**

**PISANO, Judge**

        This matter comes before the Court upon Third-Party Defendants Wills, O'Neill &

Mellk, Arnold M. Mellk, Allan Jacobson, John F. Sweeney, and Evelyn G. Heilbrunn's

(collectively "Defendants") Motion for Summary Judgment dismissing the Third-Party

Complaint of Third-Party Plaintiffs Line Rothman and Glamourmom, LLC (collectively

"Plaintiffs").  (DE 39, 40, 41.)  Plaintiffs oppose the motion.  (DE 51.)  The Court has considered

the parties' submissions and decided the matter without oral argument pursuant to Federal Rule

of Civil Procedure 78.  For the reasons set forth below, the Court will grant the Motion for

Summary Judgment dismissing Counts One and Two of the Third-Party Complaint, and the

Court will decline to exercise supplemental jurisdiction over the remaining state law claims.

## I.      BACKGROUND

### A.      Procurement of the Patent

Line Rothman developed an idea to make a nursing tank top in March 2000.  (Defs.'

Statement of Material Facts Not in Dispute ¶ 1; DE 41-8 (hereinafter "Defs. SMF").)  After

giving birth to her first child, Mrs. Rothman found the market lacked a garment that could

conceal her stomach but also provide easy nursing access and full breast support.  (Id. at ¶ 2.)

She created a tank top with a built-in bra that opens with a snap to release the soft cup for

nursing.  (Id. at ¶ 7.)  Mrs. Rothman put together a prototype of her garment in her family

kitchen by stitching an Olga nursing bra into a Jockey tank top together with additional fabric,

fasteners, and other sewing materials.  (Id. at ¶¶ 4, 5.)  She then contacted a patent attorney,

Allan Jacobson, for assistance in securing patent protection for her nursing garment.  (Id. at ¶ 8.)

Mr. Jacobson filed a provisional patent application on behalf of Mrs. Rothman on

October 6, 2000 and thereafter filed a PCT patent application on October 3, 2001 claiming the

nursing garment.  (Id. at ¶ 9.)  In the patent application, which issued as U.S. Patent No.

6,855,029 ("'029 patent"), Mr. Jacobson listed numerous prior art patents that covered a variety

of nursing bras and nursing garments.  (Id. at ¶ 10.)  Included in the disclosure were U.S. Patent

No. 4,648,404 to Clark ("Clark patent") covering a coordinated nursing slip and bra and U.S.

Patent No. 6,282,719 to Vera ("Vera patent") covering a maternity-nursing nightgown.  (See

'029 patent, References Cited.)

In the meantime, Mrs. Rothman and her husband formed Glamourmom, LLC to produce,

market, and sell her nursing garment.  (Defs. SMF ¶ 13.)  To that end, Mrs. Rothman contacted

and sent a sample of her garment along with the published PCT patent application to apparel manufacturer Leading Lady in the summer of 2002.  (Id. at ¶¶ 14, 15.)  In March 2003, Mrs. Rothman entered into licensing negotiations with Leading Lady.  (Id. at ¶ 16.)  On July 14, 2003, Mr. Jacobson forwarded to Leading Lady a copy the U.S. Patent and Trademark ("PTO") examiner's preliminary rejection of Mrs. Rothman's application.  (Id. at ¶ 18.)  The following day, Leading Lady sent Mr. Jacobson a garment identified as "JC Penney sport nursing bra," which corresponded to Leading Lady style 438.  (Id. at ¶ 19.)  Mr. Jacobson examined the garment but sent it back to Leading Lady with a note calling the garment a "prior sports bra product," and disputing any relevance it had to Mrs. Rothman's patent application.  (Id. at ¶¶ 19, 24, 25.)  Leading Lady sent Mr. Jacobson a letter on July 28, 2003 terminating licensing negotiations and informing Mr. Jacobson that Leading Lady intended to market its own nursing tank top garment, designated as Leading Lady style 460.  (Id. at ¶¶ 21, 22; see also Rothman v. Target Corp., 556 F.3d 1310, 1325-26 (Fed. Cir. 2009).)

In light of Leading Lady's plan to market a nursing tank top, Mr. Jacobson filed a "Petition to Make Special" with the PTO to expedite review of Mrs. Rothman's patent application.  (Id. at ¶ 26.)  Mr. Jacobson included the correspondence from Leading Lady but did not report Leading Lady styles 438 or 460 as prior art.  Rothman, 556 F.3d at 1325.  The '029 patent issued on February 15, 2005.  (Defs. SMF ¶ 30.)

### B.      District Court Proceedings

Mrs. Rothman, through counsel Arnold M. Mellk of the law firm Wills, O'Neill & Mellk (collectively "Mellk Defendants") and Mr. Jacobson serving as "of counsel," filed a lawsuit in the U.S. District Court for the District of New Jersey on October 7, 2005 alleging infringement of the '029 patent by Target, Corp., Motherwear International, Kohl's Department Stores, Inc.,

Motherswork, Inc., Federated Department Stores, Macy's Department Stores, Inc., Amazon.com, Inc., J.C. Penney Company, Inc., K-Mart Corp., Redcats USA, L.P., Elizabeth Lange, LLC, and Sears Holding Corp. ("Underlying Litigation"). (Id. at ¶ 31.) The defendant companies in the Underlying Litigation denied infringement and countered that the '029 patent was anticipated, obvious, unenforceable due to inequitable conduct, and that there had been prior inventorship by Haidee Johnstone, an employee of Leading Lady. See Rothman, 556 F.3d at 1316.

The district court held a Markman hearing on January 22, 2007, (Defs. SMF ¶ 34), and during the hearing, both sides agreed to certain discovery deadlines and an early May 2007 trial date. (McCallion Decl., Ex. 11 at 27; DE 47-2.) The court entered an opinion and order construing the disputed terms of the '029 patent on March 5, 2007. (Defs. SMF ¶ 35.) After the Markman opinion and order were issued, neither the Mellk Defendants nor Mr. Jacobson moved the district court "for a final comprehensive Markman order." (Pls.' Supp. Counterstatement of Material Facts Not in Dispute ¶ 7; DE 53.)

In March 2007, Plaintiffs retained Cowan, Leibowitz, & Latman, P.C. ("Cowan Firm") to serve as lead counsel. (Defs. SMF ¶ 36.) The Cowan Firm filed an amended complaint naming Glamourmom, LLC as a plaintiff in addition to Mrs. Rothman and obtained an adjournment of the trial until October 2007. (Id. at ¶¶ 37, 38.) But in September of 2007, the Cowan Firm withdrew as counsel, and John F. Sweeney and Evelyn G. Heilbrunn, both of the law firm Morgan & Finnegan, LLP, entered an appearance on behalf of Plaintiffs. (Id. at ¶¶ 39, 40.)

A ten-day trial of the Underlying Litigation was conducted before Chief Judge Garrett E. Brown, Jr. ending on November 2, 2007. (Id. at ¶ 41.) During the trial, the defendant companies offered the expert testimony of Walter Burzynski on the issue of validity and elicited testimony from Ms. Johnstone as a person of ordinary skill in the art. (Id. at ¶¶ 43, 44.) Plaintiffs did not

offer an expert witness on the issue of validity.  In conducting a cross-examination of Mr.
Burzynski, Mr. Sweeney elicited testimony that he (Mr. Burzynski) had not thought of or
appreciated the need for a tank top garment with an inner nursing feature.  Rothman, 556 F.3d at
1317.  The jury returned a verdict concluding that all defendant companies except one infringed
the '029 patent, but that the '029 patent was invalid as anticipated and obvious.  In particular, the
jury found that the '029 patent was anticipated by the Clark patent, Vera patent, Leading Lady
garment style 438, and Leading Lady garment style 460.  (McCallion Decl., Ex. 28; DE 47-8.)
The jury also found that Ms. Johnstone had invented the subject matter of the '029 patent before
Mrs. Rothman and that the '029 patent was unenforceable due to Mr. Jacobson's inequitable
conduct before the PTO.  (Id.)  After trial, Plaintiffs filed several motions for judgment as a
matter of law.  (Defs. SMF ¶ 51.)  In its motion on the issue of obviousness, Plaintiffs' attorneys
argued, among other things, that the defendant companies' expert Mr. Burzynski "admitted" that
the '029 patent was nonobvious because it was not "imaginable" to him.  Rothman v. Target
Corp., Civ. No. 05-4829, 2008 WL 1844284, at *3 (D.N.J., April 23, 2008).  But each motion for
judgment as a matter of law was denied, and the district court awarded costs and fees to the
defendant companies.  Rothman, 556 F.3d at 1316.

C.    **Federal Circuit Proceedings**

Plaintiffs appealed the denial of their motions to the Court of Appeals for the Federal
Circuit.  (Galligan Cert., Ex. M; DE 41-5.)  The Federal Circuit affirmed-in-part and reversed-in-
part in an opinion issued February 15, 2009.  Rothman, 556 F.3d 1314.  In reviewing the district
court's decision, the Federal Circuit exercised plenary review, applying the same standard that
was applied by the district court.  Id. at 1316.  Specifically, the Federal Circuit applied the
standard for a motion for judgment as a matter of law, which may be granted only if "the non-

moving party has benefited from a full hearing on the issue during a jury trial, and where a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party on that issue." Id. (citing Fed. R. Civ. P. 50(a)). Thus, the Federal Circuit "review[ed] [the] jury's conclusions on . . . a question of law, without deference, and the underlying findings of fact, whether explicit or implicit with the verdict, for substantial evidence." Id. at 1317.

The Federal Circuit affirmed the district court's denial of judgment as a matter of law on the issue of obviousness.[1] Id. at 1322. Plaintiffs' "centerpiece" argument to the court was that Mr. Burzynski's statement that he himself had not thought of the nursing tank top was an "admission" that a person of ordinary skill in the art would not have found the nursing tank top obvious. Id. at 1317. The court rejected that argument as contrary to Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1364 (Fed. Cir. 2001), which held that the "relevant inquiry is what a hypothetical ordinarily skilled artisan would have gleaned from the cited references at the time that the patent application leading to the [] patent was filed." Consequently, Mr. Burzynski's testimony that he personally had not thought of a nursing tank top was irrelevant. Id. In the same vein, Plaintiffs pointed to the testimony of two maternity garment company executives who stated upon seeing a nursing tank top design that it was "strange-looking," "unusual," and "an innovative new design." Id. at 1318. But the Federal Circuit noted that neither of these witnesses had been qualified as experts in the garment industry nor were they offered as persons of ordinary skill in the art. Id. Their testimony had "some bearing on the state of the prior art and various objective criteria for nonobviousness," but not enough to "substantially question the jury's verdict." Id.

---

[1] In affirming obviousness, the Federal Circuit declined to address anticipation, prior inventorship, or infringement of the '029 patent. Rothman, 556 F.3d at 1322.

The Federal Circuit then addressed the field of nursing garment design. Id. at 1319.  The court found that Mrs. Rothman's invention "falls into a very predictable field," and that "[i]n the predictable arts, a trial record may more readily show a motivation to combine known elements to yield a predictable result, thus rendering a claimed invention obvious." Id. (citing KSR, Int'l Co. v. Teleflex Inc., 550 U.S. 398, 416-17 (2007)).  Relying on Mrs. Rothman's testimony that "[a] shoulder strap is a shoulder strap" and that it only took "one 'day into the night'" to make the nursing garment, the court found that Mrs. Rothman herself "confirm[ed] that the materials she combined performed as expected." Id.

Turning to the "evidentiary cornucopia" of prior art presented to the jury, id. at 1320, the Federal Circuit found that the defendant companies offered "numerous prior art references during trial—four of which the jury credited as sufficient to anticipate the '029 patent.  The jury fairly could have relied on any combination of these references in reaching its obviousness verdict." Id.  Plaintiffs attempted to rebut the jury's findings by arguing that the Clark and Vera patents taught away from Mrs. Rothman's invention, but the court found this argument to be unconvincing and insufficient to render the '029 patent nonobvious. Id. at 1321.  Additionally, the court found the jury could have properly "relied on the testimony from Mr. Burzynski and Ms. Johnstone that an ordinarily skilled nursing garment designer would have been able and motivated to combine an existing nursing bra with an existing tank top to arrive at the claimed invention." Id.  The court also was not convinced that the objective evidence proffered by Plaintiffs was sufficient to find the '029 patent nonobvious as a matter of law, reasoning that "a strong prima facie obviousness showing may stand even in the face of considerable evidence of secondary considerations." Id. at 1321-22.

The Federal Circuit reversed the jury's finding of inequitable conduct.  Id. at 1327, 1328.

Mr. Jacobson was accused of inequitable conduct in failing to disclose Leading Lady style 438

and Leading Lady style 460 as prior art.  Id. at 1325-26.  The court first determined that "no

substantial evidence shows that style 438 was material to Ms. Rothman's application" because it

would have been cumulative to the numerous other nursing bras already disclosed by Mr.

Jacobson.  Id. at 1326.  As to style 460, the court found that "no substantial evidence shows that

[Mr. Jacobson] withheld that garment from the PTO with deceptive intent."  Id. at 1327.  "[A]s a

threshold matter, there was nothing to disclose[,]" because all Mr. Jacobson was told was that

Leading Lady had produced and taken orders for its own nursing tank top in 2003.  Id.  Thus,

Mr. Jacobson "not only had a good faith basis for believing that style 460 was not prior art, but

he had little basis on which to conclude that it was."  Id. at 1328.  Accordingly, the court

reversed the jury verdict of inequitable conduct and vacated the award of attorney's fees.  Id. at

1329.

### D.    The Third-Party Complaint

Wills, O'Neill & Mellk filed the original Complaint in this case to recover attorney's fees

from Mrs. Rothman and Glamourmom, LLC in the Superior Court of New Jersey, Law Division,

Mercer County on November 19, 2009.  (Galligan Cert., Ex. N; DE 41-5.)   On March 3, 2010,

Plaintiffs answered and included the Third-Party Complaint alleging negligence, legal

malpractice, breach of contract, breach of the warranty of good faith and fair dealing, and breach

of fiduciary duty.  (DE 20.)  The action was removed by Mr. Sweeney to the United States

Bankruptcy Court for the District of New Jersey on April 5, 2010 because his employer during

the Underlying Litigation, Morgan & Finnegan, LLP, was seeking Chapter 7 bankruptcy

protection.  (Galligan Cert., Ex. N.)  The parties consented to the transfer of the case to this

Court on February 25, 2011.  (Galligan Cert., Ex. O; DE 41-6.)

Defendants moved for summary judgment to dismiss the Third-Party Complaint on

November 23, 2011, (DE 41), with supplemental briefing from Mr. Jacobson as well as Mr.

Sweeney and Ms. Heilbrunn.  (DE 39, 40.)  Plaintiffs submitted a brief in opposition on January

24, 2012.  (DE 51.)  The Mellk Defendants, Mr. Sweeny and Ms. Heilbrunn, and Mr. Jacobson

each submitted briefs in reply on February 13th and 14th, 2012.  (DE 56, 59, 62.)

## II.      STANDARD OF REVIEW

A court shall grant summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law

identifies which facts are critical or "material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A material fact raises a "genuine" issue "if the evidence is such that a reasonable

jury could return a verdict" for the non-moving party.  Healy v. N.Y. Life Ins. Co., 860 F.2d

1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party

makes this showing, the burden shifts to the non-moving party to present evidence that a genuine

fact issue compels a trial.  Id. at 324.  The non-moving party must then offer admissible evidence

that establishes a genuine issue of material fact, id., not just "some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

However, "a party who does not have the trial burden of production may rely on a showing that a

party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." Celotex Corp., 477 U.S. at 323.

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. Pollack v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. Anderson, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. Big Apple BMW v. BMW of N. Am., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

### A.   Jurisdiction

"[T]he first and fundamental question" that must be addressed in each case "is that of jurisdiction." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998). Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Federal district courts also have original jurisdiction over any civil action arising under any act of Congress relating to patents. 28 U.S.C. § 1338(a).

Jurisdiction in this case arises from Plaintiffs' legal malpractice claim because an element of this claim necessarily depends on resolution of a substantial question of federal patent law. See Air Measurement Techs, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1266 (Fed. Cir. 2007.) In order to succeed on their legal malpractice claim, Plaintiffs must establish that the '029 patent would have been found valid if not for attorney negligence. See Minkin v. Gibbons, P.C., No. 2011-1178, 2012 U.S. App. LEXIS 9158, at *12-14 (Fed. Cir. May

10

4, 2012) (applying New Jersey law).  Therefore, the Court may properly exercise jurisdiction over Plaintiffs' legal malpractice claim.  The Court has supplemental jurisdiction over the other state law claims asserted in the Third-Party Complaint as well as supplemental jurisdiction over the original claims by Wills, O'Neill & Mellk seeking attorney's fees from Mrs. Rothman and Glamourmom, LLC.  28 U.S.C. § 1367(a).

**B.      Legal Malpractice and Negligence Claims**

Plaintiffs assert that Defendants are liable for negligence and legal malpractice in their representation of Plaintiffs in the Underlying Litigation.  These two claims arise from the same set of facts and name the same claim elements, and thus, the Court will address them together.  See Sommers v. McKinney, 670 A.2d 99, 103 (N.J. App. Div. 1996) ("Legal malpractice is negligence relating to an attorney's representation of a client.").

To establish legal malpractice under New Jersey law, Plaintiffs must prove by a preponderance of the evidence: (1) the existence of an attorney-client relationship giving rise to a duty of care; (2) breach of that duty by the attorney; (3) that the breach was the proximate cause of any damages sustained; and (4) actual damages.  See McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001).  The standard of care does not require an attorney to be "a guarantor of the soundness of his opinions."  Cellucci v. Bronstein, 649 A.2d 1333, 1341 (N.J. Super. Ct. App. Div. 1994) (quoting McCullough v. Sullivan, 132 A. 102, 103 (N.J. 1926)).  Nor does the standard of care make an attorney "answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice."  Id.  Instead, an attorney must practice with the "reasonable knowledge and skill ordinarily possessed by other members of his profession." Id.

Defendants argue that summary judgment is appropriate because Plaintiffs have failed to establish proximate causation and/or damages, two essential elements of a legal malpractice claim.  In particular, Defendants assert that Plaintiffs cannot demonstrate that any act or failure to act on their part substantially contributed to the jury's finding that the '029 patent is invalid.  Further, Defendants contend that any allegation of malpractice arising from negligence before the PTO must fail because the Federal Circuit reversed the determination of inequitable conduct and vacated the award of attorney's fees to the defendant companies.

### 1.    Proximate Causation

To demonstrate proximate cause, Plaintiffs must prove that the Defendants' negligence was a "substantial factor" in bringing about any damages sustained.  See Froom v. Perel, 872 A.2d 1067, 1076 (N.J. Super. Ct. App. Div. 2005) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060, 1072 (N.J. 1996)).  There are several ways that a plaintiff in a legal malpractice case may go about proving causation and damages.  Parties in New Jersey regularly use the "suit-within-a-suit" method, "in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred."  See Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 845 A.2d 602, 611-12 (N.J. 2004).  In Garcia, the Supreme Court of New Jersey discussed some shortcomings of the suit-within-a-suit format.  Id. at 612.  The court cautioned that the format ignores the reality that many cases settle before reaching trial; there may be difficulties in presenting an accurate reconstruction of the original action; and the passage of time can lead to evidentiary issues.  Id.  None of those concerns are present here.  Moreover, the Third-Party Complaint puts the merits of the Underlying Litigation at issue.  (See Pls. Br. at 1-2, 19-20.)

In a legal malpractice case in which the original action involved the application of the U.S. patent laws, a party must demonstrate by a preponderance of the evidence that the party's patent would have been valid and enforceable if it were not for the attorney's negligence.  See Minkin, 2012 U.S. App. LEXIS 9158, at *12-14 (applying New Jersey's suit-within-a suit doctrine); see also Davis v. Brouse, 596 F.3d 1355, 1361-62 (Fed. Cir. 2010) (applying Ohio's suit-within-a suit doctrine).  In other words, Plaintiffs must demonstrate that Defendants' negligence was a substantial factor leading to the invalidity of the '029 patent.

The allegations of legal malpractice are extensive,[2] but Plaintiffs have offered little evidence to demonstrate that the Defendants' actions led to the invalidation of the '029 patent. In compiling a laundry list of every possible error by Defendants, Plaintiffs neglect to address Defendants' basis for moving for summary judgment—that the '029 patent would have been held obvious regardless of any deviation from the standard of care. See Minkin, 2012 U.S. App. LEXIS 9158, at *24 ("If [the plaintiff] had factual disputes concerning nonobviousness it was obligated to raise them in response to the properly supported motion for summary judgment expressly relying on § 103(a).").

To demonstrate the obviousness of the '029 patent, Defendants rely heavily on the Federal Circuit opinion issued in the Underlying Litigation.  Plaintiffs attempt to undercut that

---

[2] The Court will not attempt to compile an exhaustive list of the over 40 separate instances of professional negligence asserted in the Third-Party Complaint.  Many of the allegations are no more than hindsight assertions that the Defendants should have done things differently in conducting the Underlying Litigation, such as discovery, staffing, document labeling, and witness examination.  (See Third-Party Compl. ¶¶ 43 (iv)-(vi), (ix), (xi)-(xiii), (xv), (xvii), 45 (v), (ix), (xi), (xii)); see McCullough, 132 A. at 103 (stating that an attorney "is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice"). Neither Plaintiffs nor their experts have made an attempt to establish specifically how these assertions deviate from the standard of care owed or how the assertions share any causal connection to the damages sustained by them.

reliance on the Federal Circuit opinion.  But in doing so, Plaintiffs do not actually address the validity of the '029 patent and instead focus only on the standard of review applied.  The Federal Circuit applied the standard for judgment as a matter of law, not a preponderance of the evidence standard as should be applied to Plaintiffs' malpractice claim.  (Pls. Br. at 17-18.)  According to Plaintiffs, it therefore follows that the Federal Circuit opinion did "not, as a matter of law, 'invalidate' anything."  (Id. at 18.)  The Court does not completely understand Plaintiffs' argument.  There can be no dispute that the '029 patent has been ruled invalid.  Further, there is no disagreement as to the evidentiary standard to be applied in this case; all parties agree that a preponderance of the evidence standard applies.  Rather, the Court must determine whether Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact as to proximate causation, which involves analysis of the validity of the '029 patent.  The Federal Circuit opinion is therefore relevant because it guides Plaintiffs in what they must do to demonstrate proximate causation.  Plaintiffs must show that the Defendants' malpractice substantially contributed to invalidation of the '029 patent.  In doing so, Plaintiffs must demonstrate what evidence or arguments, beyond what the jury heard and the Federal Circuit reviewed, should have been presented by the Defendants.

The Federal Circuit opinion highlights just how difficult proving proximate cause may be.  In affirming the jury's determination of obviousness on multiple grounds, the Federal Circuit recognized the "evidentiary cornucopia" of prior art rendering the '029 patent obvious. Rothman, 556 F.3d at 1320.  The court noted that, because any one of several references—the Clark patent, the Vera patent, Leading Lady style 438, and Leading Lady style 460—were sufficient to read on every claimed element of the '029 patent, any combination of those references could therefore render the '029 patent obvious.  Id.  The Court also pointed out that

14

Mrs. Rothman herself "confirm[ed] that the materials she combined performed as expected," id. at 1319, thereby demonstrating that her invention was obvious to a person of ordinary skill in the art.  See KSR, Int'l Co., 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").

Plaintiffs have made no attempt in this case to demonstrate how the prior art references do not render the '029 patent obvious.  Rather, in his affidavit, Plaintiffs' patent expert, Erik Cherdak, only offers an opinion that Defendants should have offered rebuttal evidence of non-obviousness.  (Cherdak Decl. ¶¶ 8-20; DE 48.)  But Mr. Cherdak makes no mention of what rebuttal evidence there was to present, makes no analysis of the prior art, and offers no opinion that the '029 patent is nonobvious.  At this stage, "a full patentability analysis similar to that required in an invalidity trial is not necessary," Minkin, 2012 U.S. App. LEXIS 9158 at *21, but Plaintiffs have not provided the Court with any evidence, expert testimony or otherwise, creating a genuine issue of material fact on the issue of the '029 patent's obviousness.  Nor, for that matter, have Plaintiffs presented evidence creating a genuine issue of fact as to whether the '029 patent is anticipated or whether the subject matter was invented first by Ms. Johnstone.

Instead of raising issues of fact as to the patentability of the '029 patent, Plaintiffs devote a great deal of their brief to criticizing Defendants' handling of the Underlying Litigation due to their alleged lack of patent litigation experience.  Yet Plaintiffs themselves seem confused on several issues of patent law.  For example, Plaintiffs assert that Defendants committed malpractice in failing to challenge the Vera patent as prior art.  (Pls. Br. at 24-24.)  Plaintiffs argue that although Defendants did try to distinguish the Vera patent, they "neglected" to raise "the more obvious point, which was that, regardless of whether the Vera patent 'met the claims' of the '029 patent or not . . . , the Vera patent could not have anticipated the '029 patent as a

15

matter of law."  (Pls. Br. at 25-26.)  According to Plaintiffs, "the Vera patent had been issued [on] July 18, 2000 (and therefore had a 'priority date' of that date), which was <u>less</u> than one year before the invention date of the '029 patent by any conceivable calculation."[3]  (<u>Id.</u> at 26 (emphasis in original).)  Thus, according to Plaintiffs, the Defendants "completely ignored the clear-cut argument under Section 102 that the Vera patent could not conceivably be considered as prior art, since there was absolutely no evidence that the Vera patent predated the '029 invention by more than one year."  (<u>Id.</u>)

  It is true that the Vera patent is not prior art under 35 U.S.C. § 102(b), which provides that "[a] person shall be entitled to a patent unless—the invention was patented . . . in this or a foreign country, more than one year prior to the application for patent."  The '029 provisional patent application was filed on October 6, 2000, before the Vera patent was issued.  But whether the nursing garment claimed in the Vera patent is prior art pursuant to 35 U.S.C. § 102(a) is anything but "clear-cut."  It seems as if Plaintiffs are unaware of § 102(a) and how that section differs from § 102(b).[4]  Section 102(a) states that "[a] person shall be entitled to a patent unless—the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  If the nursing garment claimed in the Vera patent was invented before Mrs. Rothman

---

[3] The Vera patent actually was issued on September 4, 2001.   (<u>See</u> U.S. Patent No. 6,282,719.) The Vera patent application was filed on July 18, 2000, (<u>id.</u>), and therefore, has a priority date and presumptive date of invention of July 18, 2000.

[4] In their brief, Plaintiffs cite a legal memo written by the Cowan firm in 2007.  (Pls. Br. at 27.) The memo goes through a patentability analysis and distinguishes the language of § 102(a) from § 102(b).  (<u>See</u> McCallion Decl., Ex. 41 at 2; DE 47-10.)  But in quoting the memo's analysis of § 102(a), the Plaintiffs insert brackets with language derived from § 102(b): "Third-Party Defendants had a legal memo in their file, dated June 1, 2007, specifically discussing how trial defendants' references to prior art could be challenged, among other things, on the basis that the references  to 'prior art' are only applicable if, for purposes of Section 102(a), 'the [prior art] activities . . . occurred prior to July 12, 2000 [one year prior to the writing of Rothman's letter to herself] for such activities to possible qualify as 'prior art' under 102(a)."  (Pls. Br. at 27.)

invented her nursing garment, then it is prior art.  As such, Plaintiffs are mistaken in their

assertion that garment claimed in the Vera patent could not, as a matter of law, be prior art unless

it predated Mrs. Rothman's invention by more than one year.

Plaintiffs also fault the Mellk Defendants and Mr. Jacobson for failing to move to correct

the district court's <u>Markman</u> order to properly "reflect inclusion of the non disputed claim

elements," (Pls. Br. at 3), as the "<u>Markman</u> Opinion and Order . . . should have been the

complete blueprint for the jury on infringement and validity."  (<u>Id.</u> at 10.)  In particular, Plaintiffs

point out that the <u>Markman</u> opinion and order did not include the undisputed interpretation of the

"outer garment body" term, which the parties agreed must be "surrounding the torso."  (<u>Id.</u>)

Plaintiffs again are mistaken on the law.  The purpose of a <u>Markman</u> hearing is to resolve the

parties' disputes over claim language, and thus, the <u>Markman</u> opinion and order would not have

addressed an agreed-upon term.  "Claim construction is a matter of resolution of <u>disputed</u>

meanings and technical scope, to clarify and when necessary to explain what the patentee

covered by the claims, for use in the determination of infringement.  It is not an obligatory

exercise in redundancy."  <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 418 F.3d 1282, 1311 (Fed. Cir.

2005) (quoting <u>U.S. Surgical Corp. v. Ethicon, Inc.</u>, 103 F.3d 1554, 1568 (Fed. Cir. 1997)

(emphasis added)).  Furthermore, the term "outer garment body" was in the jury charge with the

agreed upon construction.  (McCallion Decl., Ex. 55 at A86.)  Thus, even if the law did require a

<u>Markman</u> order to define non-disputed terms, no damage would have accrued here since the jury

was apprised of the non-disputed term's meaning.

These issues with Plaintiffs' malpractice claim merely serve to highlight the ill-fated

direction it takes in responding to Defendants' Motion for Summary Judgment.  Even if the

remaining assertions of malpractice are true, Plaintiffs offer insufficient evidence that

17

Defendants' malpractice was a substantial contributing factor to the invalidation of the '029 patent.  To illustrate, Plaintiffs represent in their brief that Defendants relied solely on the testimony of Mr. Burzynski in their motion for judgment as a matter of law on obviousness. (Pls. Br. at 22-25.)  Defendants certainly made that testimony a central part of the motion, and the argument was rejected as contrary to the law.  See Rothman, 556 F.3d at 1317-18.  But as the Federal Circuit pointed out, it was not the only basis on which the Defendants relied in an attempt to demonstrate nonobviousness.  Id. at 1319-1322 (addressing arguments relating to lack of motivation to combine references; prior art teaching away from the '029 patent; and objective evidence of nonobviousness including licensing, commercial success, industry praise, and copying).  In addition, the Federal Circuit found that the jury could have properly relied on the "numerous prior art references during trial—four of which the jury credited as sufficient to anticipate the '029 patent.  The jury fairly could have relied on any combination of these references in reaching its obviousness verdict."  Id. at 1321.

Plaintiffs do not explain how the alleged errors made by Defendants before trial could have contributed to a finding that the '029 patent is invalid.  Indeed, Plaintiffs' own malpractice expert, Bennett Wasserman, stated that there was a "significant" risk the '029 patent would be invalidated.  (Wasserman Cert. ¶ 22; DE 50.)  Even assuming for the sake of argument that Defendants were negligent in failing to attend a non-party deposition, (Pls. Br. at 9), in failing to preclude Ms. Johnstone's testimony, (id. at 4), and in failing to retain an obviousness expert, (id. at 36.), Plaintiffs have not specifically explained how the outcome of the jury verdict and Federal Circuit opinion would have been different.  Plaintiffs only state, in a conclusory manner, that these instances of malpractice substantially contributed to the '029 invalidity.  (See, e.g., id.)

Finally, Plaintiffs assert that the Mellk Defendants and Mr. Jacobson failed to disclose and misrepresented their lack of patent litigation experience.  (Pls. Br. at 2-3.)  However, Plaintiffs provide little detail regarding this allegation in their brief, including how lack of experience substantially contributed to the invalidation of the '029 patent.  Mr. Wasserman concluded that the failure to refer the matter to an attorney competent to handle it was a violation of the New Jersey Rules of Professional Conduct, citing In re Yetman, 113 N.J. 556, 562 (N.J. 1989).  (Wasserman Cert. ¶ 17.)  But Mr. Wasserman does not conclude that the violation proximately caused any damages.  Nor does Mr. Cherdak provide an opinion on how an experienced attorney would have conducted the litigation differently so as to successfully defend the validity of the '029 patent.

The Court, in sum, cannot rely on Plaintiffs' conclusory statements at the summary judgment stage.  See Celotex Corp., 477 U.S. at 324 (explaining the need for specific facts to show a genuine issue for trial).  Defendants put the element of proximate cause directly at issue in their Motion for Summary Judgment by asserting that no actions or failures to act on their part substantially contributed to a finding that the '029 patent is obvious.  But Plaintiffs have failed "to introduce evidence sufficient to establish an issue of material fact as to patentability."  Davis, 596 F.3d at 1364.  Despite having both a legal malpractice expert and a patent law expert, Plaintiffs offer no analysis of the '029 prior art references or any conclusions of nonobviousness, anticipation, or prior invention.  Nor do Plaintiffs make an effort to demonstrate why the jury, district court, or Federal Circuit would have found the '029 patent obvious if Defendants had complied with the standards of profession conduct.  Consequently, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact as to proximate cause.

       2.      **Damages**

The "measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence."  <u>Gautam v. De Luca</u>, 521 A.2d 1343, 1347 (N.J. Super. Ct. App. Div. 1987).  Aside from the claim for damages arising out of the invalidation of the '029 patent, Plaintiffs further allege damages arising out the jury's finding of inequitable conduct.

Plaintiffs first assert that Mr. Jacobson committed malpractice by failing to disclose Leading Lady styles 438 and 460 to the PTO.  (Pls. Br. at 31.)  Next, Plaintiffs argue that Mrs. Rothman was left vulnerable to a judgment of inequitable conduct because Mr. Jacobson and the Mellk Defendants failed to advise Mrs. Rothman to assign her patent to Glamourmom, LLC and initially named only Mrs. Rothman as a plaintiff in the Underlying Litigation.  (<u>Id.</u> at 2.)  Plaintiffs also state that it was malpractice to submit the inequitable conduct claim to the jury rather than to the court.  (Wasserman Cert. ¶ 80.)  Finally, Plaintiffs assert that Mr. Sweeney and Ms. Heilbrunn failed to advise Mrs. Rothman of the risks of an inequitable conduct verdict. (Third-Party Compl. ¶ 45(i).)

Plaintiffs acknowledge the Federal Circuit ultimately determined that no inequitable conduct occurred.  (<u>Id.</u>)  Plaintiffs nevertheless argue that, because the standard in their malpractice claim (preponderance of the evidence) is lower than the standard applied by the Federal Circuit to the inequitable conduct claim (clear and convincing evidence), "the Federal Circuit's reversal of the jury's 'inequitable conduct' verdict has no bearing whatsoever on the issue of whether Jacobson's conduct in the handling of the '029 patent application constituted legal malpractice and professional negligence[.]"  (<u>Id.</u>)

Plaintiffs' argument misses the point.  Regardless of whether, under any standard, Mr. Jacobson had a duty to submit the Leading Lady styles to the PTO, Plaintiffs won their appeal of

the inequitable conduct verdict.  The award of attorney's fees against Plaintiffs was vacated.  As a result, Plaintiffs suffered no damages arising from Mr. Jacobson's conduct before the PTO.

**C.      Plaintiffs' Remaining Claims**

In addition to their malpractice and negligence claims, Plaintiffs also brought claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  (Third Party Compl. ¶¶ 51-62.)  In particular, Plaintiffs allege that Defendants breached their respective "agreements to furnish legal services in compliance with accepted standards of care at the agreed upon cost and budgetary limits."  (Id. at ¶ 53.)  Plaintiffs also allege that Mr. Sweeny, on behalf of Morgan & Finnegan, LLP breached a settlement agreement to waive $90,000 in legal fees by failing to notify the firm's accounting department of the waiver.  (Id. at ¶ 54.)  Finally, Plaintiffs allege breach of fiduciary duty arising from violations of the New Jersey Rules of Professional Conduct including a duty to act with reasonable diligence and promptness, a duty to communicate to clients, a duty to make fees reasonable, a duty to avoid a concurrent conflict of interest, and a duty to inform a client of a potential malpractice claim against the attorney.  (Id. at ¶ 59-62.)

Having found that it is appropriate to enter summary judgment against Plaintiffs dismissing their legal malpractice and negligence claims, which provided the basis for the Court's exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a), the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  A district court, under 28 U.S.C. § 1367(c)(3), "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  Edlin Ltd. v. City of Jersey City, No. 07-3431, 2008 U.S. Dist. LEXIS 41118 (D.N.J. May 23, 2008);  see also United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)

("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right[.]").  As the Court will dismiss the malpractice and negligence claims, which provided the basis for the Court's original jurisdiction, it also will decline to exercise supplemental jurisdiction over Plaintiffs' other state law claims.  Therefore, the Court will remand to the Superior Court of New Jersey, Law Division, Mercer County the Third, Fourth, and Fifth Counts of the Third-Party Complaint: breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.

>   **D.     Original Claims Brought by Wills, O'Neill & Mellk**

With the claims in the Third-Party Complaint either dismissed or remanded, the only remaining causes of action are those originally filed by Wills, O'Neill & Mellk in the Superior Court of New Jersey to recover attorney's fees from Mrs. Rothman and Glamourmom, LLC. (Galligan Cert., Ex. N.)  Federal district courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C § 1332 (a).  Here, the parties to the original action are diverse. Wills, O'Neill & Mellk is a citizen of New Jersey, Mrs. Rothman is a citizen of New York, and Glamourmom, LLC is a citizen of New York.  (Galligan Cert., Ex. N.)  However, Wills, O'Neill & Mellk seek only $40,129.88 in attorney's fees plus past and continuing interest.  (Id. ¶ 4.) Therefore, the Court has only supplemental jurisdiction over this cause of action, not original jurisdiction.  Like the other state law claims, the Court will decline to exercise supplemental jurisdiction over Counts One through Five of the original Complaint pursuant to 28 U.S.C. § 1367(c)(3) and will remand those claims to the Superior Court of New Jersey, Law Division, Mercer County.

**IV.     CONCLUSION**

For the reasons above, the Court grants Third-Party Defendants' Motion for Summary Judgment dismissing Counts One and Two of the Third-Party Complaint.  Further, the Court declines to exercise supplemental jurisdiction over Counts Three, Four, and Five of the Third-Party Complaint as well as Counts One through Five of the Complaint filed by Wills, O'Neill & Mellk against Mrs. Line Rothman and Glamourmom, LLC.  An appropriate order is filed herewith.


Dated:  May 21, 2012


                                        s/ JOEL A. PISANO
                                        United States District Judge